**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| FRANCIS GARCIA-RIVERA, ET AL., |
|     Plaintiffs, |
|        v. |
| JACK T. ALLISON, ET AL., |
|     Defendant. |

CIV. NO. 04-1757(PG)

**OPINION AND ORDER**

On July 23, 2004, Francis Garcia-Rivera ("Garcia" or "plaintiff") and FG Management and Consulting Inc.("FG")(hereinafter collectively referred to as "plaintiffs") filed the above captioned and styled complaint against the Puerto Rico Highway and Transportation Authority ("PRHTA"); Jack T. Allison, Executive Director of the PRHTA; Fernando Fagundo-Fagundo, Secretary of the Public Works and Transportation Department and President of the PRHTA; Norberto Mass, PRHTA's Administration and Finance Director; Benjamin Soto, Chief Auditor of the "Tren Urbano" Project of the PRHTA; Adaline Torres, President of the Metropolitan Bus Authority, a Public Corporation under the PRHTA administrative umbrella (hereinafter referred to as "AMA"); Nilsa Santana, AMA's Vice-President of Administration; DMJM-Harris, Inc., (hereinafter refered to as "DMJM"); Joan Berry, DMJM's Planning Director; Robert Pittman, DMJM's Vice-President; and Fernand Gracia, DJMJ's Administration Director. It is alleged that all of the defendants are Popular Democratic Party ("PDP") activists and identified with former Governor Sila M. Calderon's Administration. It is also alleged that they conspired to discriminate against the New Progressive Party ("NPP") members including plaintiff Garcia.

Co-defendants DMJM, Joan Berry, Robert Pittman, and Fernand Gracia (hereinafter collectively referred to as "defendants" or "DMJM defendants") move to dismiss the complaint pursuant to Fed.R. Civ. P. 12(b)(6). (Docket No. 30.) For the following reasons, the Court **GRANTS** defendants' motion.

Civ. No. 04-1757(PG)                                                    Page 2

**BACKGROUND**

García, a Federal Programs Specialist, is the President and owner of FG since 1994. In October 1997, García began working as an employee of a subsidiary of AECOM Company, a multinational consulting and engineering firm, now DMJM. PRHTA had hired AECOM/DMJM for the "Tren Urbano" project in Puerto Rico.

In November 1998, García changed from an employee of AECOM/DMJM's subsidiary to a sub-contractor because DMJM contracted FG, Garcia's privately owned company, to be the Budget Control and Grants Administrator for the "Tren Urbano" project.

On November 7, 2000, the PDP won the elections and a change in administration took place. Plaintiff alleges that following this change, he was subjected to political discrimination by defendants who were all identified with the PDP. For example, in March 2003, García was summoned to a meeting in the PRHA's Central Offices with several co-defendants[1] and one of them[2] said out loud: "Here is Mr. Francis García-Rivera who had worked in AMA before on a trust position with the past Administration[3]." García alleges that this was intended to advise everyone at the meeting that he was an "outsider" and member of the NPP. Plaintiff further alleges that from that moment on, defendants began treating him differently and that he was never invited to meetings except those which had to do with written federal proposals. In sum, he avers that it became clear to him that he was losing the trust of his fellow workers solely because of his political affiliation and his comments regarding the financial problems of the "Tren Urbano" Project.

Further problems regarding plaintiffs' sub-contract and working conditions surfaced in June of 2003. García claims he requested from Joan Berry, DJMJ's Planning Director and his supervisor, that he be paid for his work performed in April and June 2003. It is alleged that she told him that

---

[1] It is alleged that Jack Allison, Norberto Mass, Gabriel Alcaraz, Adaline Torres, and Nilsa Santana were present.

[2] It is not clear from the complaint who of the attendees to the meeting made the statement. It appears as if it was co-defendant Nilsa Santana but it is not pellucidly clear from the pleadings.

[3] García had been External Resources Director in AMA from 1994 to 1997 during the NPP Administration.

Civ. No. 04-1757(PG)                                                    Page 3

if he didn't like it (not being paid) he should finish his work, leave, and serve notice to terminate his sub-contract. Likewise in June of 2003, Fernand Gracia, DMJM's Administration Director, sent a letter to Garcia advising him that he had "not performed the sub-contracted services". Garcia insists, however, that he had complied with the contract. In the letter, Fernand Gracia declared García in default of his sub-contract with DMJM and gave him 10 days to "cure" his "failure to perform". Following this letter, Garcia claims that in August of 2003 co-defendant Benjamín Soto, Chief Auditor of the "Tren Urbano" Project of the PRHTA, told him that his job would end by the end of the month, notwithstanding that his sub-contract with DMJM was set to expire at the end of September 2003. García asked Benjamín Soto to pay him for his work preformed given that he was owed around $200,000.00 pursuant to the sub-contract with DMJM but Mr. Soto told him we would be paid later.

Following these events, Garcia alleges that co-defendant Norberto Mass called him and asked him if he would vote for Aníbal Acevedo-Vilá, the PPD's candidate for governor for the 2004 elections. Plaintiff told him that he would not. Afterwards, Garcia called on several occasion, send e-mails and letters to defendants requesting that he be paid the monies owed to him pursuant to the sub-contract but his attempts were unavailing.

Plaintiffs sued the DMJM's defendants claiming that they have suffered damages as a consequence of DMJM's debt to them of $200,000.00 for professional services rendered and unpaid as well as loss of income from August 13 to September 30, 2003.

**DISCUSSION**

### I.    Motion to Dismiss

When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and draw all reasonable inferences in favor of the non-moving party. Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000). A complaint should not be dismissed unless it appears beyond any doubt that the non-moving party can prove no set of facts which may support a claim entitling him or her to relief. Ronald C. Brown v. Hot, Sexy, and Safe Productions, Inc., 68 F.3d 525 (1st Cir.1995). While this standard is very generous to the non-moving party, it does not follow that it is completely "toothless". Zeus Projects Limited v. Pérez & Cia, 187 F.R.D. 23, 26 (D.P.R.

Civ. No. 04-1757(PG)                                                    Page 4

1999). The complainant may not rest merely on "unsupported conclusions or interpretations of law." <u>Washington Legal Foundation v. Massachusetts Bar Foundation</u>, 993 F.2d 962, 971 (1st Cir. 1993). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." <u>Gooly v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir.1988). See <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004)("[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where, and why")). The Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir.1996).

## II. **Analysis**

Plaintiffs claim that defendants actions infringed Garcia's rights under the First and Fourteenth Amendment Rights of the U.S. Constitution. Furthermore, they claim that defendants actions were in violation of Puerto Rico Law 100, P.R. Law. Ann. tit. 29 § 146. and Article 1802 of the Puerto Rico Civil Code, P.R. Law. Ann. tit. 31 § 5141. The DMJM defendants move to dismiss the complaint arguing plaintiffs have failed to state a claim upon which relieve can be against them.

### A. Section 1983 claim

To state a§ 1983 claim, plaintiffs must show "that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) [that] the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 151 -152 (1st Cir. 2006)(<u>quoting</u> <u>Johnson v. Mahoney</u>, 424 F.3d 83, 89 (1st Cir. 2005)); <u>see</u> <u>Vives v. Fajardo</u>, 399 F.Supp.2d 50, 54-55 (D.P.R. 2005); <u>Destek Group, Inc. v. State of New Hampshire Public Utilities Commission</u>, 318 F.3d 32, 39 (1st Cir.2003); <u>Cruz-Erazo v. Rivera-Montanez</u>, 212 F.3d 617, 621 (1st Cir. 2000).

Defendants argue that plaintiffs §1983 claim should be dismissed because the DMJM defendants are not state actors.

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible," and "the party charged with the

Civ. No. 04-1757(PG)                                                    Page 5

deprivation must be a person who may fairly be said to be a state actor." West v. Atkins, 487 U.S. 42, 49-50(1988)(citations omitted). Indeed, the defendants' action must be "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

A careful reading of the complaint and the pleadings clearly show that DMJM, a multinational consulting and engineering firm is a private corporation which the government of Puerto Rico contracted with for the "Tren Urbano" project. DMJM and its employees, co-defendants Joan Berry, Robert Pittman, and Fernand Gracia, are not state actors. DMJM is a private entity whose conduct may not be attributable to the State. Therefore, absent any state action, plaintiffs' claim against these private actors is not actionable under §1983[4].

### B.  Law 100 claim

Puerto Rico Law 100 prohibits discrimination by any employer on the basis of his or her age, race, color, sex, social or national origin, social condition, political affiliation or political or religious ideology. P.R. Laws Ann, tit 29 § 146. Employer is defined as "any natural or [juridical] person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person." P.R. Laws Ann, tit 29 § 151.

Pursuant to the complaint, when the alleged discriminatory events took place, (following the November 2000 elections), Garcia was not an employee of DMJM but merely a sub-contractor of DMJM. There being no employer-employee relationship between Garcia and the DMJM defendants, the Law 100 claim against them should be dismissed.

### C.  Article 1802 claim.

Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann, tit. 31 §

---

[4] Defendants also move to dismiss plaintiffs' §1983 claim because: (a) there are no allegations that could establish individual liability by the DMJM defendants; (b) there are no allegations of conduct that could constitute a deprivation of Plaintiffs' federally protected rights by the DMJM defendants; (c) there is no causal relationship between Joan Berry and Fernand Gracia's actions and Plaintiffs' "public interest expressions,"; and lastly, (d) it is barred by the one-year-statute of limitations. (See Docket No. 30.)Because we find that defendants are not state actors, the Court needs not reach these other arguments for dismissal.

Civ. No. 04-1757(PG)                                                    Page 6

5141, states in its pertinent part that: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id., see Rivera Concepcion v. Pepsi Cola of Puerto Rico, 288 F.Supp.2d 167, 170 (D.P.R. 2003). "With respect to contractual breaches, Article 1054, a separate provision of the Puerto Rico Civil Code, states that [t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay... shall be subject to indemnity for the losses and damages caused thereby. Fagot Rodriguez v. Republic of Costa Rica, 139 F.Supp.2d 173, 185, n. 10 (D.P.R. 2001)(quoting  P.R. Laws Ann, tit.  31 § 3018).

    The Puerto Rico Supreme Court has held "that the two sections are mutually exclusive, observing that Article 1802 applies only when 'no prior obligation exists between the person causing the damage and the one receiving it'." Fagot Rodriguez, 139 F.Supp.2d at 185, n. 10(quoting Arroyo v. Caldas, 68 P.R.R. 639, 641(1948).  "A plaintiff may bring a negligence claim based on a contractual relationship when there is both an alleged breach of contract and an alleged breach of the general duty not to negligently cause injury." Nieves Domenech v. Dymax Corp., 952 F.Supp. 57, 65-66 (D.P.R. 1996). This general duty not to act negligently, however, "must arise out of conditions separate from the parties' contract." Id., (citations omitted). Indeed, if "a plaintiff's damages arise exclusively from a defendant's alleged breach of contract, the plaintiff does not have a separate cause of action for negligence." Id., (citations omitted).  "Said in another way, Section 1802 of the Civil Code, that is, Puerto Rico's General Negligence Statute, excludes from its terms ... contractual negligence and damages." Stainless Steel & Metal Mfg. Corp. v. Sacal V.I., Inc.,  452 F.Supp. 1073, 1081 (D.P.R. 1978).

    Here, plaintiffs seek redress for defendants' breach of contract for not paying them the monies owed to them pursuant to the sub-contract agreement between FG and DMJM. They claim to have suffered damages because of DMJM's debt to plaintiffs of $200,000.00 for professional services rendered and unpaid, as well as lost of income from August 13 until September 30, 2003. Clearly, Garcia's claim against DMJM is a breach of contract claim and not a tort claim under Article 1802. The relationship between plaintiffs and the DMJM defendants is based on the contract or contracts entered into by the

Civ. No. 04-1757(PG)                                                  Page 7

parties.  Therefore, any liability defendants might face regarding their lack of payment to plaintiffs' for the services rendered stems from a prior existing obligation.  Accordingly, the Article 1802 claim must be dismissed. See Stainless Steel & Metal Mfg. Corp., 452 F.Supp. at 1081 ("[i]t is only when the obligation is not of a contractual nature, that is, only when an illicit act or omission involving fault or negligence is present that [Article 1802] is of application[5].

## CONCLUSION

WHEREFORE, the Court **GRANTS** defendants motion (Docket No. 33) and dismisses the complaint with prejudice as to co-defendants DMJM-Harris, Inc., Joan Berry, Robert Pittman, and Fernand Gracia.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 7, 2006.

                                              S/JUAN M. PEREZ-GIMENEZ
                                              U. S. DISTRICT JUDGE

---

[5] Even if plaintiffs' could have brought a tort claim under Article 1802 against the DMJM defendants, it would be dismissed as well inasmuch as the complaint fails to allege what, if any, duty the DMJM Defendants owed to Plaintiffs, how their alleged conduct breached any such duty, or what causal relationship such breach had with regards to Plaintiffs' alleged damages.