**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FRANCIS GARCIA-RIVERA, ET AL., <br><br>  Plaintiffs, <br><br>  v. <br><br> JACK T. ALLISON, ET AL., <br><br>  Defendant. | CIV. NO. 04-1757(PG) |

**OPINION AND ORDER**

On July 23, 2004, plaintiff Francis Garcia-Rivera ("Garcia") and FG Management and Consulting Inc.("FG")(collectively"plaintiffs") filed suit against the Puerto Rico Highway and Transportation Authority ("PRHTA"); Jack T. Allison, Executive Director of the PRHTA; Fernando Fagundo-Fagundo, Secretary of the Public Works and Transportation Department and President of the PRHTA; Norberto Mass, PRHTA's Administration and Finance Director; Benjamin Soto, Chief Auditor of the "Tren Urbano" Project of the PRHTA; Adaline Torres ("Torres"), President of the Metropolitan Bus Authority, a Public Corporation under the PRHTA's administrative umbrella ("AMA"); Nilsa Santana, AMA's Vice-President of Administration; DMJM-Harris, Inc.; Joan Berry, DMJM's Planning Director; Robert Pittman, DMJM's Vice-President; and Fernand Gracia, DJMJ's Administration Director. It is alleged that all of the defendants are Popular Democratic Party ("PDP") activists and identified with former Governor Sila M. Calderon's Administration. It is also alleged that they conspired to discriminate against New Progressive Party ("NPP") members including plaintiff Garcia.

Before the Court is co-defendants Adaline Torres("Torres") and Nilsa Santana's("Santana") unopposed[1] Motion to Dismiss the Complaint (Docket No. 33.) For the following reasons, the Court **GRANTS** co-defendants' motion.

**BACKGROUND**

García, a Federal Programs Specialist, is the President and owner of FG since 1994. In October 1997, García began working as an employee of a subsidiary

---

[1] Co-defendants filed their motion to dismiss on October 15, 2004 (Docket No. 33.) Plaintiffs' answer was due on November 3, 2004. On November 24, 2004, co-defendants moved to have the Court rule on their Motion to Dismiss as unopposed pursuant to Local Rule 7.1(b). (Docket No. 39). Seeing that the deadline had clearly expired, the Court granted co-defendants' motion(Docket No. 42.)

Civ. No. 04-1757 (PG)                                                    Page 2

of AECOM Company, a multinational consulting and engineering firm, now DMJM. PRHTA had hired AECOM/DMJM for the "Tren Urbano" project in Puerto Rico.

In November 1998, DMJM contracted FG, Garcia's privately owned company, to be the Budget Control and Grants Administrator for the "Tren Urbano" project. Accordingly, García changed from an employee of AECOM/DMJM's subsidiary to a sub-contractor.

On November 7, 2000, the PDP won the elections and a change in administration took place. Garcia alleges that following this change, he was subjected to political discrimination by defendants who were all identified with the PDP. For example, in March of 2003, García was summoned to a meeting in the PRHA's Central Offices with several co-defendants[2] and allegedly Santana[3] said out loud: "Here is Mr. Francis García-Rivera who had worked in AMA before on a trust position with the past Administration[4]." García claims that this was intended to advise everyone at the meeting that he was an "outsider" and member of the NPP. Plaintiff alleges that from that moment on, defendants began treating him differently. He was not invited to meetings except for a few ones, his telephone calls were left unanswered, and he was taken off the Monthly Report List.

Garcia alleges that he nevertheless continued to gather the information he needed to do his job and complete his reports. However, when he inquired information for his reports, his fellow workers would respond with suspicion and would barely give him any information. Garcia claims that these actions were prompted by defendants. In sum, he avers that it became clear to him that he was losing the trust of his fellow workers solely because of his political affiliation and his comments regarding the financial problems of the "Tren Urbano" Project[5].

---

[2] It is alleged that Jack Allison, Norberto Mass, Gabriel Alcaraz, Adaline Torres, and Nilsa Santana were present.

[3] It is not pellucid from the complaint who of the attendees made the statement, however, it appears as if it was co-defendant Santana.

[4] García had been External Resources Director in AMA from 1994 to 1997 during the NPP Administration.

[5] It is averred that Garcia had criticized defendants' decisions to allow certain allegedly super-excessive "change orders" regarding the "Tren Urbano" Project.

Civ. No. 04-1757 (PG)                                                    Page 3

**DISCUSSION**

### I.   Motion to Dismiss

When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and draw all reasonable inferences in favor of the non-moving party. Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000). A complaint should not be dismissed unless it appears beyond any doubt that the non-moving party can prove no set of facts which may support a claim entitling him or her to relief. Ronald C. Brown v. Hot, Sexy, and Safe Productions, Inc., 68 F.3d 525 (1st Cir.1995). While this standard is very generous to the non-moving party, it does not follow that it is completely "toothless". Zeus Projects Limited v. Perez & Cia, 187 F.R.D. 23, 26 (D.P.R. 1999). The complainant may not rest merely on "unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). In order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gooly v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988). See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004)("[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where, and why")). The Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996).

### II.   Analysis

Plaintiffs claim that defendants' actions infringed Garcia's rights under the First and Fourteenth Amendment Rights of the U.S. Constitution. They also seek redress pursuant to Puerto Rico Law 100, P.R. Law. Ann. tit. 29 § 146, and Article 1802 of the Puerto Rico Civil Code, P.R. Law. Ann. tit. 31 § 5141.

Santana and Torres move to dismiss the complaint arguing that plaintiffs fail to state a §1983, Article 1802, or Law 100 claim and because the complaint is time-barred.

#### A. §1983 claim

It is well-settled that the limitations period for §1983 claims "is governed by the applicable state statute of limitations for personal injury actions, which is one year in Puerto Rico". Velazquez-Rivera v. Danzig, 234 F.3d

Civ. No. 04-1757 (PG)                                                    Page 4

790, 795 (1st Cir. 2000); see P.R. Laws Ann. tit. 31, § 5298. See also Wilson v. Garcia, 471 U.S. 261, 278-80(1985); Benitez-Pons v. Com. of Puerto Rico, 136 F.3d 54, 59 -60 (1st Cir. 1998); Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir.1997). This one year period "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury". Benitez-Pons, 136 F.3d at 59.

Co-defendants aver that the allegation against them is circumscribed to one event: the meeting held in March of 2003. They argue that from the allegations contained in the complaint the only reasonable conclusion is that they did not have any further participation in the alleged political discrimination scheme against Garcia. Therefore, since the only alleged discriminatory act on their part took place in March, 2003, and plaintiffs filed the complaint in July, 2004, the §1983 claim against them is time-barred.

Having reviewed the complaint, we find that indeed the only factual averment regarding co-defendants Santana and Torres is the one about the meeting where allegedly Santana said in Torres' presence: "Here is Mr. Francis Garcia-Rivera who had worked in AMA before on a trust position with the past Administration". Accordingly, the one year period began running at the latest on April 1, 2003. The complaint was therefore due, at least as to these co-defendant, in April of 2004. Plaintiffs filed the complaint in July of 2004, three months later and they have not alleged that they tolled that statute of limitations[6]. Therefore, plaintiffs' §1983 claim for violations of Garcia's rights under the First and Fourteenth Amendment is hereby dismissed with prejudice as to co-defendants Santana and Torres.

### B. Puerto Rico Law 100, P.R. Law. Ann. tit. 29 § 146

Puerto Rico Law 100 prohibits discrimination by any employer on the basis of his or her age, race, color, sex, social or national origin, social condition, political affiliation or political or religious ideology. P.R. Laws Ann, tit 29 § 146. Employer is defined as "any natural or [juridical] person

---

[6] As with the applicable statute of limitation, tolling is also governed by state law. Benitez-Pons, 136 F.3d at 59. Pursuant to Article 1873 of the Puerto Rico Civil Code, the one year period may be tolled by: "their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303. Here, plaintiffs' have not showed that they the tolled the statute of limitations as co-defendants Santana and Torres.

Civ. No. 04-1757 (PG)                                                    Page 5

employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person." P.R. Laws Ann, tit 29 § 151. That statute is "strictly aimed at employer-employee relations." Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 4-5 (1994), English Translation at 1994 WL 909527, 1994 P.R.-Eng. 909, 527(1994). Indeed it "seeks only to address the right of the workers and to afford a special protection to their interests." Id. "It has nothing to do, then, with third persons or with other persons that are not employees." Id.

Santana and Torres claim that there is no employer-employee relationship between García and them. They never supervised or controlled plaintiff's work and neither did they have anything to do with the Garcia's contractual relationship with DMJM.

According to the complaint, Garcia was a sub-contractor of DMJM, a multinational consulting and engineering firm hired by the PRHTA to provide professional services in connection with the "Tren Urbano" Project. (See Docket No. 1 at ¶ 4). Co-defendants Torres and Santana are employees of the AMA, a separate public corporation which is a subsidiary of the PRHTA. (See id., at ¶ 8.) Santana and Torres never employed or supervised Garcia. There being no employer-employee relationship between co-defendants and Garcia, the Court dismisses the Law 100 claim against them.

### C. Article 1802 P.R. Civil Code, P.R. Laws Ann, tit. 31 § 5141

Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann, tit. 31 § 5141, states in pertinent part that: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id., see Rivera Concepcion v. Pepsi Cola of Puerto Rico, 288 F.Supp.2d 167, 170 (D.P.R. 2003).

The only allegation in the complaint regarding Santana and Torres was that the former made a comment about Garcia in Torres' presence. Therefore, any claim under Article 1802 would have to be for defamation.

"The Supreme Court of Puerto Rico has recognized two causes of action in damages for defamation." Gonzalez Perez v. Gomez Aguila, 312 F.Supp.2d 161, 173 (D.P.R. 2004). "First is the one established in the Libel and Slander Act of 1902 and the second one is the one derived from article 1802 for damages

Civ. No. 04-1757 (PG)                                                    Page 6

sustained after the publication of an intentional or negligent defamatory expression." Id. (citation omitted)

> [A]rticle 1802 provides one of the most fundamental principles of Puerto Rico jurisprudence-that of the Aquilian liability for personal acts-[that] all damage, whether material or moral, gives rise to reparation if three requirements are met: first, proof of the reality of the damage suffered; second, a causal relation between the damage and the action or omission of another person; and third, said act or omission is negligent or wrongful.

Id. (citing Sociedad de Gananciales v. El Vocero de Puerto Rico, Inc., 135 D.P.R. 122, 134 (1994), P.R. Offic. Trans. No. 91-414, slip op. at 10 (citations omitted).

Santana and Torres claim that plaintiffs do not set forth any of the above mentioned elements. First, they argue that plaintiffs do not allege facts that if proven true would show the reality of the damage suffered. Secondly, co-defendants insist that plaintiffs fail to show that a causal relation exists between any alleged damage they suffered and co-defendants' actions, i.e.-- Santana's comment at the meeting in Torres' presence. Third and last, co-defendants insist that Santana's comment was not negligent or wrongful because according to the complaint it is the truth.

Upon careful review of the allegations in the complaint, the Court agrees with co-defendants. Plaintiffs' have failed to allege the necessary facts to support a claim of defamation against Santana and Torres under Article 1802 of the Puerto Rico Civil Code. Accordingly, this claim is also dismissed with prejudice as to these co-defendants.

### CONCLUSION

WHEREFORE, the Court **GRANTS** co-defendants Nilsa Santana and Adaline Torres' Motion to Dismiss (Docket No. 33). Partial Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, August 7, 2006.

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE